oral argument not to exceed 15 minutes per side. Mr. Banghart Lynn for the appellant. Your honors, and may it please the court, Linus Banghart Lynn, assistant attorney general for the state of Michigan, on behalf of the respondent sheriff who respectfully requests that this court reverse the district court's grant of habeas relief based on the mistaken premise that the petitioner's theft crimes were privileged by federal election law. And may it further please the court. Well essentially the argument is that federal election law creates a privilege for him to steal this money. If he had said, if his lies were, before I get into that I'm going to reserve two minutes of my time for rebuttal your honor. Thank you. If he had said, I'm collecting money for charity, and he wasn't, right? That's fraud. That's easy. I'm collecting money for cancer research. Whatever, any lie you tell in order to get people to give you money, that's a crime. And that's what he was convicted of. But here, because the lie he told had some connection to the federal presidential election, his argument is, which the district court accepted, that now you're in an area where the state of Michigan loses its power to protect its citizens from fraud. That's the basis of the district court's grant. And that's the mistake. In your view, was the Michigan Court of Appeals obligated to consider Mr. DeWall's preemption argument unappealed? Is that something they were considered? I mean, yes. Was it obligated to? I suppose, that's an interesting question, your honor. Yeah, I think it was, and it did. It did consider the preemption argument. Now, one of the two major problems. So if they considered it, then we're getting, our next analysis is whether its determination was reasonable or not reasonable. Exactly, your honor. And it is the result. This is one of the major mistakes that the district court made here, is that it is the result that needs to be examined for its reasonableness or unreasonableness. And virtually the entire district court decision, and I'm referring to the report and recommendation which was adopted by the district judge as its opinion, I think it was part 2D of the R&R, which talked about the unreasonableness, the entire thing was a critique of the analysis engaged in by the Michigan Court of Appeals. The length of it, the cases it cited, the cases it didn't cite, etc. None of this has any basis in AEDPA. This is a complete violation of AEDPA because habeas courts don't sit to grade the quality of analysis of state court decisions. They are to look at the result reached and to consider, to affirmatively consider any arguments that supported or could have supported that result and to consider whether fair-minded jurists could disagree that these were contrary to unreasonable application of clearly established federal law as set forth in United States Supreme Court holdings. The district court didn't do any of this. Instead it said, well, these cases don't apply that you cited. These cases you could have cited, which are not U.S. Supreme Court decisions. These are lower court, federal court decisions. And in fact it got the case that the district court identified as most on point, the district court actually got the holding of the case wrong. And this was Friends of Phil Graham. It said, well, so first off, the state court wasn't even required to consider that because it's not a U.S. Supreme Court case. It's a case out of the Eastern District of Virginia. And second, Friends of Phil Graham, the Eastern District of Virginia didn't hold that the fraud claim was preempted by the Federal Election Campaign Act. It said we don't have to answer that question because there are other issues with the plaintiff's claim. There's not enough evidence on it. So there was another claim that they did find preempted, but the fraud claims it didn't hold were preempted. The other fundamental problem with the district court's decision, aside from violating AEDPA, is that it fundamentally misunderstood the nature of the underlying criminal prosecution. The state of Michigan did not prosecute the petitioner for violating federal election law. This was, as I started the argument by telling you, Judge Gilman, this was a prosecution for theft, for fraud, for false pretenses, and for larceny by conversion. But you will acknowledge, though, that as a part of the prosecution, the prosecutors specifically couched much of their case and examination on the use of campaign contributors and relied on the Federal Election Commission's reports in that prosecution, correct? Yes, Your Honor. So is it reasonable for the judge to have made a sort of a direct connection and construed or inferred that this was a prosecution based on those campaign issues? It's not, Your Honor, respectfully. And the reason is because the prosecution's use of the federal election campaign, the rules and regulations and laws that govern it, they were not elements of the crime. This was not the predicate for the criminal action. And you can go back to the transcript and look at the jury instructions, and they don't have anything to do with election campaign law. The petitioner's knowing violation of these rules was probative to show as basically 404B evidence. I mean, essentially it was intent, motive, lack of mistake, things like that. So if the petitioner argued, well, I was just doing this, which is fine, the prosecution can say, well, no, no, no, what you did here, it actually violates the Federal Election Campaign Act. That's not the basis for the prosecution, but it shows the jury, okay, this wasn't just something that was being done in good faith. It's probative of his intent. It's not an element of the crime. The crime, again, is tricking people into giving you their money by pretending that you're affiliated with Al Gore, pretending you're affiliated with George Bush, when you're in fact not. That was the question that was given to the jury, and the jury believed that the prosecution had proven that beyond a reasonable doubt. Is there any case directly on point that holds by the Supreme Court saying whether state prosecutions for theft or these kinds of crimes is or is not preempted by the Federal Election Campaign Act? There's not, Your Honor. There is no U.S. Supreme Court case construing the preemption provision of the Federal Election Campaign Act, which is a huge point in the state's favor in this case, because without that, all you're left with, because again, the district court has to look at clearly established federal law, which is U.S. Supreme Court holdings, and you can't look at any U.S. Supreme Court holdings on this provision because there aren't any. And so what you're left with, and now the district court says, well, we're saying that there's no case with the exact same fact pattern. That's the straw man. We're not saying you have to find the same fact pattern. We're just saying there's no cases under this statute at all, so what you're left with is general preemption principles. And now the U.S. Supreme Court has said, under Yarbrough v. Alvarado, that the more general the rule, the more leeway the state court is afforded in interpreting this rule on a case-by-case basis. The district court didn't recognize that. You have to give maximum leeway to the state court here because this is a general rule that they're applying. Isn't this analogous to like Strickland in effective assistance of counseling? Yes, Your Honor. I would argue that it is actually more general than Strickland. So Strickland is a general rule that's entitled to a lot of leeway. I would say that this one, I would argue, is more general than Strickland. I mean, what the U.S. Supreme Court has said about preemption, and this is in Hines v. Davidovitz, they said that when you look at these questions, you have to look at the intent of Congress, and this is a quote, they said, there can be no one crystal clear, distinctly marked formula. This is what the U.S. Supreme Court has said about express preemption. Now, I think the closest case on point, now the district court cited Pennsylvania v. Nelson as an example of the U.S. Supreme Court finding a state criminal conviction preempted. It's exceedingly rare that a state criminal conviction, state criminal prosecution is going to be preempted by federal law. In fact, Pennsylvania v. Nelson is the only case that I've seen, and I think it's the only case identified by the district court or by the petitioner. But Pennsylvania v. Nelson cited a couple of other cases, and I think Fox v. Ohio is a case that is the closest to on point as you'll find. Now, in this case, Ohio sought to prosecute someone for passing counterfeited money. This clearly borders on a federal interest here, so there's clearly a preemption argument to be made, and the Supreme Court rejected that and said, and I'm going to, with the court's indulgence, I'm going to read from the case because I think this applies very closely to what we're talking about here. The U.S. Supreme Court said, the punishment of a cheat or a misdemeanor practiced within the state and against those whom she is bound to protect is peculiarly and appropriately within her functions and duties, and it is difficult to imagine an interference with those duties and functions which would be regular or justifiable. That's what we have here. We have a cheat within the state of Michigan, and the state of Michigan is punishing that, and it's difficult to imagine an interference like the district court imposed here that would be regular or justifiable. Similarly, the Pennsylvania v. Nelson court cited its own decision in Gilbert v. Minnesota, which was a state prosecution for interference with U.S. military recruiting. Again, a federal interest at stake, a preemption argument raised. The U.S. Supreme Court said, no, Minnesota can prosecute that. The state can prosecute that. You have an interest here. This is not preempted. As I understand it, the FECA has this express preemption provision. Yes, Your Honor. And the act and its regulations essentially say that the express preemption provision from FECA states that the act and its regulations, quote, superseded and present any provision of state law with respect to the election to federal office. Yes. And there's just one very limited exception. And as Judge Donald asked in her questions, the reliance here by the state included reliance on the regulation as it related to donor list and identifying candidates and political affiliated committees and things of that sort. So I'm still having some difficulty with your argument that this is not – that it wasn't clearly established that there would be preemption here. It wasn't clearly established that there would be preemption because the criminal prosecutions were not predicated on violations of the Federal Election Campaign Act. These violations were probative of the defendant's intent, but the actual elements of the crime, the prosecution could have proven its case even without any violations of the Federal Election Campaign Act. It might have been more difficult. They might have had a tougher argument. But this is just probative evidence of his absence of mistake of his intent. And I'm glad you brought up the statute because as the district court recognized, the Supreme Court has said to look at the agency regulations here. And the FEC has promulgated regulations interpreting exactly this statute, which I don't think the district court properly considered because under 11 CFR 108.7B and C, there are nine sort of categories of state laws that are and are not – three that are preempted and nine – or I'm sorry, six that are not preempted. This prosecution does not fall under any of the categories identified in B. He wasn't prosecuted for any problem with organization or registration, disclosure of receipts and expenditures, limitations on contributions and expenditures. None of that had any role in the prosecution. If anything, this conduct fell under – now our argument is this doesn't fall – this isn't a state law with respect to election of federal office at all. But if you're going to consider the regulations and look where this fell, I would look to subsection C.4, where the state is allowed to have laws prohibiting false registration, voting fraud, theft of ballots and similar offenses. Not preempted. So the state of Michigan can criminally prosecute voting fraud, not preempted by the FECA, but the argument here is that when it's just regular fraud, which is always within the state's power to prosecute, now it is preempted by the FECA. It doesn't make any sense. The prosecution wasn't based on B1, B2, B3. This was simply the petitioner tricking people into giving him their money, just as if he were lying about being affiliated with a charity, just as if he were lying about being affiliated with Susan G. Komen or whatever it might be. And that's the basis here. And with the remnants of my time, I'm going to address the question that Judge Donald, that you asked and said wouldn't have been reasonable for the district court to see that this was – even if I can see that that's reasonable, and as I responded to you, I said it's not reasonable, but even if it were reasonable, that's not enough to grant habeas relief. If there are two reasonable ways you can resolve this case, the state has to win because it has to be unreasonable and error in law be on any basis for reasonable disagreement, for fair-minded disagreement for the state court to hold as they did. So even if it's reasonable for the district court to say, ah, this is an election campaign prosecution, it's also reasonable for the state court to say it wasn't. If the statute, though, is ambiguous with respect to the language that it expresses or displaces any provision of state law with respect to election to federal office, if that's determined to be ambiguous, do you lose? No, Your Honor. If it's ambiguous, we absolutely win because the petitioner has to show that the state court's holding was objectively unreasonable, a mistake – the words from Harrington v. Richter or any one of a number of recent U.S. Supreme Court decisions on ADPA – you have to show that the state court – there's no way any fair-minded jurist could agree with what the state court did. So if it's ambiguous, we win. Now our position is it's not ambiguous. This was not a state law with respect to election to federal office, and so we win on those grounds as well. And I see that I'm out of time, so unless there are further questions, I'll see you again on rebuttal. Thank you, Your Honors. Good morning, Your Honors. Good morning. Nick Bostic on behalf of Mr. DeWald. So, Mr. Counsel, your adversary has said that under any possible imaginable scenario, he wins, so what do you want to tell us? I'll start out with this notion of his claim that the end result was that Mr. DeWald is privileged to commit fraud. I think there's a huge distinction between the word privilege and the word preemption. I have certain privileges as I'm standing here making my argument in open court, but if I get out of line, you're not preempted from holding me in contempt. So there's a huge difference between the two. He's not privileged to commit fraud because the FEC can step in and they have a variety of remedies. So there are two policy points that I want to emphasize. I know this court doesn't set policy, but I want to emphasize two policy points that Congress gave us. The preemption is to promote and insist on consistency and uniformity of application of rules and interpretations to federal elective office. And this process that they've created prevents individual states from interfering in that and causing federal candidates to have to respond to different standards and different issues in the various places. The second policy issue is the First Amendment concepts that are built into campaign finance. That has been litigated. There have been a lot of changes over the last several years. It's obviously a very important public policy issue. And it's our position, and I think Congress's position, that we're building in a structure to protect and recognize those First Amendment rights by having the FEC first use remedial measures and resorting to criminal sanctions only as a last resort. So those are the two key policy things that I think have to stay in the forefront as this is considered. So then you look at the typical scenario that we all learn initially in law school. What does the Constitution say? The Constitution never reserved this particular power to the states. That's important when we look at the case law that talks about where is this presumption that the police power can be exercised. For this issue, it was never granted to the states by the Constitution. You're talking about the election clause of the Constitution? Yes, Your Honor. But how do you deal with the Supreme Court case of Cook v. Gralick from 2001, which says the interpretation of the election clause grants the states the ability, and I quote, to regulate notices, registration, supervision of voting, protection of voters, and the prevention of fraud and corrupt practices. And in this prevention of fraud and corrupt practices that your client was prosecuted for by the state of Michigan? I'm sorry, Your Honor. What was the year of that case? 2001. I think that applies to the ability of the states. It's in that narrow area of congressional elections where they can regulate certain aspects of congressional elections like the place of voting. And certain other instances of the qualifications of the candidates. I believe that that is limited to those narrow areas. And the prevention of fraud and corrupt practices is what the Supreme Court said. When we have, and this is interesting, I noticed they're trying to define voter fraud broadly, they being the respondent here. I looked at 42 U.S. Code section 1973I, which is a listing of prohibited acts related to voter. They're trying to say that voting fraud, but I looked it up, and it's talking about the casting of a ballot. When they're talking, when you see voter fraud in literature, I think of the casting of ballots, interfering with people showing up to the polls, the ID law issues. So I think when they're using that, in that case you just cited, Judge Gilman, I think they're talking about the fraud related to the eligibility to vote and the casting of ballots as opposed to campaign finance aspects, which is clearly something that Congress wanted the FEC to take care of. So I think that's how I would have to answer. Let's focus specifically on the Federal Election Commission regulations, though, that deal with the very act we're talking about. Clearly you have to concede that there are certain actions that the state can take that are not preempted by the Federal Election Campaign Act, right? Because the regulations specifically talk about what's not preempted. And so does 403. Right. Right, exactly. And I think there are four categories. I don't know if I can rattle them off the top of my head. Voting fraud and similar offenses are things that the regulations specifically says are not preempted, right? Right. Okay. So maybe this isn't voting fraud because it wasn't casting of ballots. What about, though, a similar offense? I mean, I hear your clients going around saying, hey, give me money for Bush, give me money for Gore, when in fact most of the money ends up, what, in an offshore bank account of your clients, right? Well, I think the math came out to about 17%, but I dispute that. 17% actually went to Bush and Gore and the rest went to your client. 17% went out. A small part of that came back because it was rejected. That's the math that the state did. But I think the percentage is higher because 172,000 of that was seized. So when you do the math, you subtract that out. The percentage is much higher. Whatever it is, the bulk stayed with your client, didn't it? Oh, the bulk, yes. Seven hundred and something thousand dollars. Finding bulk. Thinking of the common use of the word bulk, yes. Yes. Okay. I think that leads us to the concept of ad justum generis when you're talking about or similar conduct. It follows the phrase voter fraud. And I think that's a good debate, Your Honor, but I think at the end of the day, because we are dealing with express preemption as opposed to a field that's been occupied or a direct conflict with a state law. All right. Can you cite me a Supreme Court case that holds that the Federal Election Payment Act preempts state law fraud claims like this? Is there a Supreme Court case you can cite me? No. Well, don't you lose because of that? No, sir. Why do you not lose? Because the standard under the AEDPA has to deal with following the direction of or legal principles that flow from United States Supreme Court decisions. But, counsel, I think you've just acknowledged that, I believe you did, that the Supreme Court has never ruled that a state cannot enforce criminal laws of general applicability where a federal election provides the context of the crime. And just because there is an election, the Supreme Court has never said that the state's criminal laws of general applicability are all of a sudden just preempted or abrogated, have they? You said you couldn't find a case. I can't. But just as the magistrate judge walked through the legal principles of how we analyze preemption, those general legal principles are very clear from the U.S. Supreme Court, and they set out the path that a court should follow any time a new set of facts comes into it. Let me give you an absurd hypothetical. Let's say that you're in a federal election, and a person goes out of zeal to get their client elected and pulls a weapon and holds it on a voter and says, go in the booth and vote for John Doe. Are you saying now that a state could not prosecute that crime under its general criminal laws just because it happened in the context of an election? No, I think there's almost an on-point example of that in 42 U.S.C. 1973I. It specifically talks about duress, threats, acts of violence, blocking the voting booth. It specifically defines it under the federal law. So it would stand to reason that when you're talking about the concept of voter fraud, which is excluded under 403 and 108.7, it would fall under the recognized definitions of voter fraud. It's broader than the word fraud, obviously, because it's almost to the level of violence. But it's intimidation, coercion, things of that nature, talking about at the ballot. So I think that it would fall under the recognized language that's already exempted, and we acknowledge that under 403 and 108.7. All right. Let's talk about AEDPA. We clearly have to give AEDPA deference to the state court's decision, do we not? Yes, sir. All right. Now, as the Supreme Court defines that, we have to basically say or conclude that no fair-minded jurist could agree with what the state court of Michigan did, right? Yes, sir. Isn't that a hard sell? I have several things to say about that, if you'll indulge me. Go right ahead. First of all, they failed to recognize express preemption. I think that's a huge legal mistake that no fair-minded jurist would agree was proper by the Michigan Court of Appeals. They didn't talk about express preemption. They failed to determine the domain of what is preempted in their analysis. Now, it is an interesting debate. I looked in the reply brief from the state about modified AEDPA or full AEDPA preference. I understand all that. I think under either analysis, we get to the same point. The third thing they did was they failed to recognize that the presumption of state police powers has not applied since 2005 by two U.S. Supreme Court cases. So this presumption that they believed applied was specifically removed by the United States Supreme Court. And I think that's term limits versus Thornton. All right. But I think what you're going at is what your opposing counsel said. You're criticizing the allegedly sloppy analysis of the Michigan Court of Appeals. But that isn't really the issue before us. They could be sloppy, sloppy, sloppy and still be right. Or at least that fair-minded jurists, some, could say, well, the end result that the state can prosecute your client for fraud is still okay. But for the fact that the facts admitted at the case and the closing argument of the Assistant Attorney General relied exclusively on claims totally related to campaign finance, totally occupied by the field of the Federal Election Commission and totally expressly preempted by Congress. So I understand we're attacking the analysis of the Michigan Court of Appeals, but taking it one step further and looking at what was the end result, look at the end result of the trial first. The closing argument is nothing but complaining about campaign finance. All right. Let's go back to the Federal Election Commission's regulation that says what is preempted. There are three categories that are clearly expressly preempted, right? Yes. All right. Which one of those do you claim your case fits into? The financing of campaigns and fundraising and not just financing campaign of a candidate, but the fundraising and financing in general under the First Amendment associated with federal elections. All right. In what case can you cite that, can you cite any Supreme Court case that says, aha, that preempts and states can't get involved with anything that involves campaign financing? For U.S. Supreme Court? Was that the question? Yes. Your Honor, I can't remember the exact details. I think the one that's going to come closest is the City of New York versus the FCC, and I believe that's cited by the magistrate in his report recommendation, and I believe it's going to be on pages 15 through 18 of my brief. Does that case involve a criminal prosecution? I also have a note here, Your Honor, talking about term limits. You didn't answer my question. I understand, but I'm talking about the police powers. You're right. I looked at the wrong note. I was talking about police powers. Your question was finance, and again, it's just the analysis of going through the express preemption analysis first. The state is wanting to jump to the occupied field analysis and skip the express preemption analysis, and that's where I think there's ships passing in the night here. We have to look at what do we have. We have express preemption. Oh, one last thought. The state interference here is dramatized by the argument in their brief about only 91,000 from one side went out and only 36,000 went out. We can't leave it to the states to decide how much should be operating costs and how much should flow through. Again, that's part of the policy. Thank you. Thank you, Mr. Bostic. Mr. Banghardt-Lennon? Thank you, Your Honors. With several points here. First of all, which section of the regs does this fall under? Subsection B1, B2, B3, and the answer was financing and fundraising. Financing and fundraising don't appear in B1, B2, or B3 of 11 CFR 108.7. So it couldn't be those. B1 is organization and registration of political committees. He wasn't prosecuted for any problem with the organization or registration of the committees. Disclosure of receipts and expenditures. There was no prosecution based on disclosure or failure to disclose. And limitation on contributions and expenditures. There was no prosecution based on any state-imposed limitations on how much a candidate could receive. My understanding, at least in the briefs, is that Mr. DeWall has relied on B1 and B2. I don't know if that was clear today or not. It wasn't to me, Your Honor. It wasn't. But it seems to be pretty clear in the briefing. Right. And I think I said in my initial argument, and I've just said just now, it doesn't fall under B1 and B2. So I won't belabor the point. But to the extent that the answer is financing and fundraising, it's not in the recs. And another thing, and I'm not sure if I understood what my brother was saying here about how we've tried to define voter fraud broadly. If we've given the impression that this case is about voter fraud, then that's a mistake. This isn't about voter fraud. This is just about fraud. Well, false pretenses, fraud, and larceny by conversion. Different ways of tricking people out of their money. This isn't about voter fraud. If it were about voter fraud, ironically enough, we'd be in a better position because of 11 CFR 108.7C4 where the state's allowed to prohibit voter fraud. But instead, we're in a much more classically realm of state power, police power. And for some reason that gives us a harder road. It doesn't make sense. My brother said the Constitution never reserved this particular power to the state. Well, again, that begs the question because what particular power are we talking about here? We're talking about the power to prosecute theft, tricking people out of their money, false pretenses, larceny by conversion, and common law fraud. That's the particular power at issue here, and it is reserved to the states. My time is up. I'd be glad to answer any other questions. Okay. Thank you very much, counsel, both of you, for your arguments today. We certainly appreciate them, as well as your briefing. The case will be submitted, and you may call the next case.